IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| COURTNEY FELLER, individually, and as Surviving Spouse of NICHOLAS S. FELLER, and COURTNEY FELLER, as Parent and Next Friend of SOPHIA GRACE FELLER and QUINN FELLER, | )<br>)<br>)<br>)<br>) Case No.: 1: 13 - cv - 199 |
| Plaintiff, | ) |
| v. | ) |
| KOCH FOODS, LLC. | ) |
| Defendant. | ) |

**PLAINTIFF COURTNEY FELLER'S
DAUBERT MOTION REGARDING MARTIN MOORE-EDE**

Plaintiff, Courtney Feller, by and through her attorneys, LANNOM AND WILLIAMS and CLIFFORD LAW OFFICES, P.C. hereby files her *Daubert* Motion regarding the testimony of Martin Moore-Ede ("*Moore-Ede*"). In support of this Motion, Plaintiff states as follows:

1. This matter arises out of the tragic death of Nicolas Feller. Mr. Feller was a construction worker who was killed on I-75 at or near mile marker 34.50 at approximately 3:41 a.m. on September 24, 2012 when a Koch Foods, LLC flat-bed tractor/trailer combination carrying live chickens entered a construction zone and crashed into one of the construction vehicles, the decedent (Nicolas Feller), and a state trooper vehicle with its flashing lights on.

2. The truck was operated by Charles Morgan, a 54 year old employee and/or agent of Defendant Koch Foods, LLC.

3. Mr. Morgan had been on duty for approximately 3 hours and 40 minutes but had been awake for 17 of the 21 hours before the crash. Additionally, in the week before the crash (September 17, 2012 through September 21, 2012), he had violated the Koch Foods 12 hour duty-time rule on

each of the periods he worked by being on duty for 12 hours, 45 minutes; 14 hours, 15 minutes; 15 hours, 37 minutes; and 16 hours, 25 minutes, respectively. (See Deposition of a Howard Niddifer at pp. 130-143, **Exhibit "C"**; *Feed and Live Haul Tickets and Inspection Reports of Charles Morgan*, **Group Exhibit "B"**).

4. Defendant has retained Martin Moore-Ede to render an opinion on whether there is evidence that would make it more likely than not that this was a fatigue-related accident. (*See Deposition of Moore-Ede* at p. 35, **Exhibit "A"**).[1] (hereinafter "*Moore-Ede Dep.*").

5. Moore-Ede opines:

(1) The circumstances of the accident indicate Charles Morgan's failure to adequately steer his tractor-trailer and maintain his position in the right-hand travel lane of I-75 northbound was the proximate cause of the accident that occurred at approximately 3:40 a.m. on September 24, 2012 in Bradley County, Tennessee.

(2) The failure of Charles Morgan to adequately steer his tractor-trailer and maintain his position in the right-hand travel lane of I-75 northbound and subsequent collision with the International C B Straight truck with a mounted attenuator was due to a lapse of attention by Mr. Morgan.

(3) There are multiple factors, such as driver distraction, driver fatigue and/or driver impairment that could have contributed to Mr. Morgan's lapse of attention. However, after reviewing the materials I have received to date, I conclude that driver fatigue was not a significant contributing factor in the accident that occurred at approximately 3:40 a.m. on September 24, 2012 in Bradley County, Tennessee.

(4) Koch Foods was not aware of, and could not reasonably have known of any impairment of Charles Morgan prior to the accident.

*See Moore-Ede Rule 26 Report*, **Exhibit "N"**.

---

[1] All Exhibits referenced herein are contained in the Memorandum of Law filed in conjunction with this Motion.

6. In addition to rendering opinions regarding fatigue, Moore-Ede has included in his report and analysis "possibilities" of the cause of Morgan's "lapse of attention" and the crash other than fatigue. These "possibilities" according to Moore-Ede, include: (1) Distraction (such as spilling coffee, changing the radio station, or reaching for something); (2) some kind of an emergency (like an animal running in front of the truck); or (3) some type of sudden illness or unknown medical condition (such as syncope or other unspecified medical conditions).

7. While Moore-Ede wishes to inject these other "possibilities" into his opinions and into the case, he does not cite to a single fact or evidence from anything he has reviewed in the case that shows that there was any distraction, emergency or some type of illness or unknown medical condition relating to Morgan. In fact, he conceded in his deposition that there are no facts that support these "other possibilities." (*Moore-Ede Dep.* at pp. 44-47).

8. As to Moore-Ede's opinion that Morgan was not fatigued, Moore-Ede's opinions should be barred for several reasons. First and foremost, it does not take any particular expertise to form the opinion that being awake for 17 of 21 hours before the crash after being on duty excessive hours in violation of a company's own policy for an extended period of time will result in driver fatigue. This is especially true, where the company had a policy in place for quarterly training on fatigue management and there is not one piece of paper that shows Morgan ever received that training. The jury can consider for itself whether any fatigue that Morgan may have suffered contributed to the crash, either by causing him to make a poor driving choice or by delaying his reaction to the attenuator truck he hit, without applying his brakes. Attention, perception and

3

Case 1:14-cv-00090-HSM-SKL   Document 44   Filed 05/15/15   Page 3 of 7   PageID #: 459

decision making are "within the normal life experiences of the jury." *See Tom v. S.B., Inc.,* 2013 WL 3179108 at * 4 (D. New Mexico, 2013).[2]

9. Additionally, the factual premise to Moore-Ede's opinion that Morgan was not fatigued ignores key factors. For example, in order to draw the conclusion that Morgan was not fatigued and that Koch Foods was or could not have been aware of his impairment before the crash, Moore-Ede assumed that Mr. Morgan utilized his time off since his last shift (after violating Koch's 12 hour duty time rule each day the week before) in an appropriate manner and that he had been trained by Koch on how to do so. This ignores:

(a) the fact that there is not one shred of evidence that Morgan ever received the quarterly training that Koch claims it provided to its employees;

(b) the fact that while Koch had a required training program in place, when it came to Morgan (and likely other drivers) Koch paid "lip service" to the requirement by excusing drivers (like Morgan) from the quarterly training if it conflicted with their work-schedule or vacations (*See Deposition of Charles Wethington* at pp. 138-141, **Exhibit "D"**);

(c) While relying on Morgan's rest period to refresh him and cure the sleep deficit from the week before, he refuses to acknowledge that Morgan was up for 17 of the 21 hours before the crash, and had he not crashed and continued to work, he would have likely been awake for 23 of 27 hours; and

(d) that the culture at Koch to not follow its own training mandate (by permitting Morgan to skip all of the mandatory training sessions at which fatigue management was taught) and to not track the hours of their drivers and to instead permit them to habitually violate the Koch 12 hour duty-time policy was a culture of indifference. There was no oversight over how long the workers were on duty and on their training regarding fatigue and fatigue management, which gave Morgan license to do as he

---

[2] Defendant indicated in its response to Plaintiff's Motion For Leave to Call in Excess of Three Experts for Good Cause Shown, Pursuant to E.D. Tenn. L.R. 42.3 . (Doc. No.: 61 at p. 11, n. 2) the same rationale, as it applied to Plaintiff's fatigue expert, Dennis Wylie and that Defendant would be moving to exclude Wyile. Defendant can't have it both ways. If Moore-Ede is permitted to testify as to the reasons he believes Morgan wasn't fatigued, Wylie should be permitted to testify as to the reasons he believes Morgan was fatigued.

4

saw fit with the time he had off, instead of utilizing it in a manner which had him show up for his shift with adequate rest.

10. Moore-Ede also ignores his previous writings and testimony regarding the facts of the occurrence. Morgan driving directly into the back of a truck with a lighted arrow board directing him to the right after passing a back truck with a similar arrow board and an orange sign saying "LEFT LANE CLOSED AHEAD" and three sets of orange "ROAD WORK 1500 FEET" and "ROAD WORK AHEAD" is entirely consistent with his research and writing on what happens to fatigued persons. In fact, he concedes in his deposition and has previously written that ***when a person falls asleep behind the wheel, they do not brake or swerve to avoid an obstacle as an alert person would, they just hit the bridge, abutment, or other vehicle full speed head on with no self protective action***. (*See 24 Hour Society* at p. 119 – **Exhibit "P"**) (*Moore-Ede Dep.* at p. 68). Moore-Ede is not aware of any evidence that Mr. Morgan hit the brakes or swerved to avoid a collision in this case. (*Moore-Ede Dep.* at p. 69).

11. These factors are all more fully-established in the accompanying Memorandum of Law being filed in conjunction with this Motion,

12. Moore-Ede has no foundation to draw the bulk of the conclusions he has drawn, and his testimony would be extremely prejudicial to the Plaintiff. Furthermore, this testimony lacks any probative value, lacks foundation, is purely speculative, and should be precluded under Fed. R. Evidence 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny; and Fed. R. Evidence 403.

13. Moore-Ede's testimony that Morgan was distracted, encountered a roadway emergency or had a medical issue – despite the fact that there is no factual evidence to support his

5

opinions – is a backdoor way of Moore-Ede trying to pass the blame on Morgan's lapse of attention to some bogus, unknown cause and is completely irrelevant. The expert opinions of Moore-Ede are based on nothing but speculation and should be barred.

14. Moore-Ede's's testimony will cause the jury to resolve the matter on an improper basis because he has insufficient evidence to make his "opinion". Once the jury hears of Moore-Ede's 's *per se* opinions (which lack any factual support) that Morgan was not fatigued (despite the fact that the 54 year old driver was awake for 17 of the 21 hours before the 3:41 a.m. wreck) but was instead somehow distracted, encountered some kind of an unknown roadway emergency, or that Morgan had some type of sudden illness or unknown medical condition, the case will have been decided. All of this, despite the fact that Moore-Ede has no scientific, valid evidence to allow him to determine that these types of things somehow caused the occurrence.

WHEREFORE, for all of the reasons stated above and in the accompanying Memorandum of Law, Plaintiff, Courtney Feller, respectfully requests that this Honorable Court enter an Order barring Defendant's Expert Martin Moore-Ede, from testifying: (a) relating to the unsubstantiated conclusions as to the cause of Morgan's "lapse of attention", including any alleged distraction, roadway emergency, or sudden illness; (b) that Morgan (after being awake for 17 of 21 hours before the crash and working excessive hours the week before the occurrence) was somehow not fatigued at 3:41 a.m.; and (c) that Koch was not aware and could not have reasonably known of any impairment of Charles Morgan prior to the occurrence, pursuant to Fed. R. Evid. 702, *Daubert* and its' progeny, and Fed. R. Evid. 403, and for any other relief this Honorable Court deems appropriate.

6

Dated: May 15, 2015                              **LANNON & WILLIAMS, PLLC**

                                          /s/ B. Keith Williams

                                          B. Keith Williams, BPR No. 16339
                                          Attorney for Plaintiff
                                          137 Public Square
                                          Lebanon, TN 37087
                                          (615) 444-2900

                                          – and –

                                          Michael S. Krzak
                                          Clifford Law Offices, P.C.
                                          120 N. LaSalle Street, Suite 3100
                                          Chicago, IL 60602
                                          (312)899-9090

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 15th day of May, 2015, a copy of the foregoing was served via the Court's electronic delivery system:

                                Sean W. Martin
                                Carr Allison
                                Attorneys for Defendant1
                                651 E. 4th Street, Suite 100
                                Chattanooga, TN 37403

                                /s/ B. Keith Williams